## No. 19,808.

JOHN JACKSON DYER *v*. PEOPLE OF THE
STATE OF COLORADO.
(364 P. [2d] 1062)

Decided September 18, 1961.   Rehearing denied October 2, 1961.

Plaintiff in error, pro se.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. J. F. BRAUER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as defendant, was convicted of the crime of aggravated robbery and sentenced to a term of not less than seven nor more than ten years in the state penitentiary. Appearing pro se in this court he seeks reversal of the judgment by writ of error.

The "Abstract of Record" and "briefs" prepared and filed by defendant demonstrate conclusively that he does not comprehend the legal significance of the judicial opinions to which he refers, and is lacking in ability to correctly interpret and apply the language which he quotes from various text writers.

The instrument captioned "Assignments of Error" reads as follows:

"1. The Court erred in failing to explain to the jury what the testimony was during the cross examination of Mr. Mater.

"2. The Court erred in allowing the witness Jack Deeds to testify concerning identification of the defendant as the person he saw in the Glenarm Drug Store on October 30, 1959, based upon his identification of the defendant at the County Jail some six months or six weeks prior to the trial herein.

"3. The Court erred in failing to strike the testimony of the witness Jack Deeds, as to his identification of the defendant and in failing to instruct the jury to disregard his testimony.

"4. The Court erred in failing to direct a verdict of not guilty at the close of the peoples case.

"5. The court erred in failing to strike the testimony of Gail Draper, concerning another crime in no way connected with the crime defendant was on trial for.

At the trial of the case defendant was represented by an attorney, well known to this court as an experienced and able lawyer, who had theretofore been appointed to represent him. After the verdict of the jury was returned a motion for new trial was filed and argued by counsel. Most of the matters which defendant argues in this court were not mentioned in the motion for a new trial. It should not be necessary to constantly reaffirm that only matters which are called to the attention of the trial court by motion for a new trial will be considered on writ of error, unless, to prevent injustice we elect on our own motion to notice manifest error to which no assignment was made in the motion for a new trial. *Cook v. People,* 129 Colo. 14, 266 P. (2d) 776. In *Kirkendoll v. People,* 138 Colo. 267, 331 P. (2d) 809, we said, inter alia:

"We do not have one set of laws and rules governing procedures in the Supreme Court on writ of error in those cases in which lawyers appear, and another for those who elect to represent themselves. Any person has the constitutional right to defend a criminal action 'in person and by counsel.' If he is so unwise, or so egocentric, as to elect to act as his own attorney he must accept the burden and the hazards incident to that decision."

Defendant was convicted by a jury upon an abundance of evidence including identification by two witnesses who were present during the robbery. He took the stand in his own defense. He outlined his background to the jury by announcing that he had never done an honest day's work in his life; that he was a professional shoplifter and drug addict, and that in addition to other

charges he had been convicted in federal courts of felonies on four different occasions. However, he absolutely assured the jury that he never had and never would commit any crime of violence like the one with which he was charged in this trial. He assured the jury that, far from having committed this robbery on the 30th of October, he was in Skaggs Drug Store between 5 and 5:30 on that evening, trying to pass as he had many times before, a forged narcotics prescription, but, because of the apparent suspicion of the druggist, he became frightened and left town that night for Nebraska. He certainly was not in the Glenarm Drug Store at all on the 30th of October, and he had never been in the Draper Grocery Store. (There was evidence of a similar offense on November 1, 1959, at the Draper Grocery.)

The only other witness called by the defense, interestingly enough, was the pharmacist at the Skaggs Drug Store. He backed up the defendant's story that defendant had been in there on the 30th of October; that he had handed to one of the pharmacists a narcotics prescription which looked to those who examined it behind the counter as though it could be a forgery. The police were notified, but before they arrived the defendant left the store. The only significant difference between the druggist's version of the attempt to pass a forged prescription in the Skaggs Drug Store and that presented by defendant himself, involved the time element. Defendant said he had been in there between 5 and 5:30 on the 30th of October, whereas the druggist said that it was between 5:50 and 6 o'clock.

■ The Glenarm Drug Store, in which the crime for which defendant was convicted was committed, and the Skaggs Drug Store are in the same neighborhood, being about two city blocks apart. The jury could reasonably conclude that defendant had been at both places. The victim of the robbery testified that it occured at about 6:00 o'clock that evening and the other witness to the

crime, who was a customer in the store, stated that it happened "a little after 6 o'clock" in the evening.

The record in this cause is entirely free from prejudicial error and the judgment is affirmed.

MR. JUSTICE DOYLE not participating.